CASE 33—PETITION EQUITY—October 24.

Leaf, &c., v. Leaf.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. BENEFIT SOCIETIES—WIDOW AND INFANT CHILDREN CONSTITUTE "FAMILY" OF DECEASED MEMBER.—The "Widows' and Orphans' Benefit Fund," created by the charter of the Knights of Honor for the benefit of the "families" of deceased members, is primarily for the benefit of the widow and infant children; and where a certificate is made payable to the widow, who occupies the home with the infant

children, they constitute the "family" within the meaning of the charter, and the fund is for their benefit; adult children who are not dependent and do not live in the immediate household not being included.

2. SAME—CHANGE OF BENEFICIARY.—While a member who has had a certificate issued payable to one member of his family may, ordinarily, with the consent of the order, have a new certificate issued substituting the name of any other member of his family as the beneficiary, yet equities may arise which will prevent such a change; and where, as in this case, the wife, to whom the original certificate was issued, has kept it alive by paying the assessments out of her own earnings and has surrendered property to her husband upon the faith that she was to have the fund, she has a superior equity to all others; and, although the husband had a new certificate issued, naming his adult children as the beneficiaries, the widow, upon his death, is entitled to the fund for the benefit of herself and infant children residing with her.

3. SAME—EFFECT OF DIVORCE.—Whether or not the wife's right to insurance on the life of the husband for her benefit is, as a general rule, forfeited by a divorce subsequently obtained, her right still continues, notwithstanding the divorce, where equities have arisen in her favor, as in this case.

4. SAME.—Where a member to whom a certificate has been issued by a Kentucky Lodge has the right to a new certificate changing the beneficiary, the Supreme Lodge of Missouri has the power to make the change, the Kentucky lodges being a part of or subordinate to that Supreme Lodge.

5. SAME.—Where a new certificate, changing the beneficiary, has been issued and the society has paid the money over to the new beneficiaries, with or without notice of an equity on the part of the beneficiaries in the first certificate, the society will be protected. But where, as in this case, the money has not been paid over and the litigation is between the different persons claiming to be entitled as beneficiaries, the Chancellor should carry into effect the object of the corporation.

W. McKEE DUNCAN FOR APPELLANT.

1. The requisites prescribed by the constitution and laws of the order as to the issual of a new certificate in lieu of an existing one are in the nature of safeguards to the Supreme Lodge, and even if the Supreme Lodge sees fit to waive them altogether the beneficiaries can not complain. (Manning v. A. O. U. W., 86 Ky., 136; Southern Tier Relief Ass'n v. Landenback, 5 N. Y. Supplement, 901.)

2. The general insurance law of the State applies only to an ordinary insurance where the beneficiary has a vested right in the policy. But in mutual benefit societies the beneficiary has only a mere expectancy. (Masonic Mut. Ben. Soc. v. Burkhart, 110 Ind., 189; Swift v. Ben-

efit Ass'n, 96 Ill., 309; Schillinger v. Boes, 85 Ky.; Knights of Honor v. Watson, N. H., 15 Atl. Rep., 125.)

And where made as a gift it is subject to the right of the member to change. (Fisk v. Eq. Aid Union, 11 Atl. Rep., 85; Appeal of Beatty, 15 Atl., 861.)

3. The member has the unqualified right to direct payment to any one besides his family. The name given to the fund has no significance. (Niblack on Mut. Ben. Societies, sec. 184; Gentry v. Sup. Lodge, Knights of Honor, 30 N. W. Rep., 865; Knights of Honor v. Nairn, Mich., 26 N. W. Rep., 826.)

4. The word "family" embraces all children whether infants, adults or members of distinct households. (Carmichael v. The N. W. Mut. Ben. Ass'n, 51 Mich., 494; Knights of Honor v. Nairn, 26 N. W. Rep. 826.)

The word "orphan" in the charters of benevolent societies is used in the sense of children. (Jackman v. Nelson, Mass., 17 N. E. Rep., 529.)

The association alone can raise the question as to who is the proper beneficiary of the fund. (Johnson v. Sup. Lodge, Knights of Honor, Ark., 13 S. W. Rep., 794; Knights of Honor v. Watson, N. H., 15 Atl. Rep., 125.)

JAMES S. PIRTLE, L. N. DEMBITZ on same side.

Brief not in record.

ABBOTT & RUTLEDGE for appellee.

1. The member of a benefit association has no right after a certificate has been issued to him designating a particular beneficiary to change the beneficiary. (Weisert v. Muehl, 81 Ky., 336; Presbyterian Mutual Assurance Fund v. Allen, 106 Ind., 593; Dietrich, &c., v. Madison Relief Ass'n, 45 Wis., 83; 17 Abbott, New Cases, N. Y., p. 16.)

2. Even if the Kentucky corporation could cancel the certificate and issue a new one, the Missouri corporation, which was not a party to the contract, could not do so. (State ex rel Graham v. Miller, &c., 46 Mich., 26; Allnut v. High Court of Forresters, 28 N. W. Rep., 202.)

3. The payment of the assessments by appellee gave her an equitable title to the fund that could not be taken from her. (Swift v. Ben. Ass'n, 96 Ill.; Pingrey v. Nat. Life Ins. Co., 144 Mass., 374; Lemon v. Phœnix Life Ins. Co., 38 Conn., 294; Phœnix Life Ins. Co. v. Durnham, 8 Ins. L. J., 173.)

4. The divorce proceedings did not destroy the rights of appellee in this certificate, as her insurable interest must be decided by her status at the time it was issued. (McGee v. Phœnix Ins. Co., 28 Mo.; Mut. Life Ins. Co. v. Shaffer, 94 U. S., 457; Goldsmith v. Union Mut. Life Ins. Co., 17 Abbott, New Cases, N. Y., p. 15.)

Besides, the wife continued to have an insurable interest in the life

Leaf, &c., v. Leaf.

of the husband after the divorce for the benefit of his infant children. (Schillinger v. Boes, 85 Ky.)

5. As the adult children of Peter Leaf were not members of his family or dependents of his they were not eligible as beneficiaries, and the certificates issued to them were void. (Hogan v. Garden Ins. Co., 80 Ill.; Fohner's Appeal, 87 Penn., 136; American Legion of Honor v. Perry, 140 Mass., 588; Elsey, &c., v. Odd Fellows Mut. Relief Ass'n, 142 Mass., 224; Addison v. New England Commercial Trav. Ass'n, 16 Ins. L. J., 932; Brooklyn Masonic Relief Ass'n v. Hanson, et al., 6 N. Y. Supp., 161, 53 Hun.; Ballou v. Giles, Adm'r, 50 Mich., 614.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This controversy is between Louisa Leaf, who was at one time the wife of Peter Leaf, and his children by a former wife, Alexander, Reuben and Miss Nellie Leaf, who are the appellants in this court. It originated as follows:

Peter Leaf, during his life, was a member of the order known as the Knights of Honor, and what is termed a *benefit* certificate for $2,000 was issued upon his life in March, 1881, and by his direction made payable to the appellee, Louisa Leaf, who was then his wife. In the year 1887 Peter Leaf obtained another benefit certificate in lieu of the one payable to his wife issued by the Supreme Lodge, Knights of Honor of Missouri, and made that certificate payable to his son, Alexander. In a few months thereafter the certificate making his son the beneficiary was surrendered and another one issued by the Supreme Lodge of Missouri made payable to his son (the beneficiary in the second certificate) and his brothers and sister, who were all children by his first wife. The appellee, Louisa Leaf, retained the first certificate and her husband, Peter Leaf, obtained the second certificate upon an affidavit made that his wife, Louisa, refused to surrender to him the

first that it might be canceled.  Peter Leaf dying, the Supreme Lodge filed a bill of interpleader in the court below against Louisa Leaf, the holder of the original certificate, and the appellants, the holders of the last certificate, calling upon them to assert their several claims and paying the $2,000, the benefit fund, into court that the Chancellor might order it paid to the parties entitled. The Supreme Lodge has, therefore, no interest in the litigation, only asking the Chancellor to render such a judgment as is in accordance with the design of this benevolent corporation.  Peter Leaf, the insured, had, by the appellee, three children who were infants at his death and at the institution of this action.

Some years after deceased joined the order he became improvident and addicted to the use of liquor, so much so that his wife, Louisa, was declared a *feme sole* that she might manage and control the property, consisting of realty of the value of two or three thousand dollars, the title to which was in her, but the accumulation was doubtless the result of their joint efforts.  He gave to his wife the benefit certificate as her property and she held and claimed it as her separate estate; not only so, but when her husband had lost all interest in his family by reason of his dissipated habits, she took from the earnings of her daily labor a sufficient sum in every month during the period of two or more years to pay his assessments or dues so as to prevent a forfeiture of the policy.  After this the wife, Louisa, by a proceeding in equity, procured a divorce from her husband and was restored to all the rights of a single woman and her children left to her care and keeping.  She surrendered to her husband a moiety of the realty, the title being in her

name, in settlement of their property rights under the judgment of divorce, and retained the benefit certificate as her property, and no assertion of claim was made to it by her husband, and no notice given her of any change in the beneficiary either then or to be thereafter made by him. She had been paying the assessments to a member of the subordinate lodge in this State, and the second certificate was obtained upon an affidavit showing upon its face to the Missouri Supreme Lodge that she, Louisa, held the certificate and refused to surrender it. The beneficiaries in the second and third benefit certificate were all of age when both certificates were issued, and not living with or dependent upon the father for protection or support. It is insisted by counsel for the appellee that the gift of the certificate to the wife, her payment of the dues upon it for two or more years, the settlement of their property rights when the final judgment was rendered with no assertion of claim by the husband, or his purpose to change the beneficiary, vested the wife with an equitable interest as against her husband and his adult children, who were made the beneficiaries in the last certificate.

This is not a controversy between the lodge and these parties. If they had paid the money over to the last beneficiaries with or without notice of the equity on the part of the wife, the lodge would, doubtless, be protected, as all must subordinate themselves, when members, to the rules and laws of the lodge when made in pursuance of its charter, and when certificates are issued the lodge will not be required to ascertain that some other is entitled than the one named as the beneficiary. No such question arises here, and the Chancellor, in his judgment,

should carry into effect the object of the corporation.
One of the main objects of this order is to promote be-
nevolence and charity by establishing *a widows' and
orphans' benefit fund,* from which, on the satisfactory evi-
dence of the death of a member of the corporation who has
complied with all its requirements, a sum not to exceed
two thousand dollars shall be paid to his family, or as he
may direct. Article 9, section 5 of the constitution of
this corporation, adopted after this certificate had been
issued to the appellee, Louisa, allowed a member, at any
time while in good standing, " to surrender his benefit
certificate which shall be forwarded by the Reporter of
his lodge to the Supreme Reporter, who shall thereupon
cancel the old certificate and issue a new one in lieu
thereof to such member, payable as he shall have directed,'"
and section 4 of the same article provides " the bene-
ficiary may be changed as the member may thereafter
direct, in accordance with the laws of the order, and such
change shall be entered in the benefit certificate." Under
these provisions of the act of incorporation or its general
laws the appellants claim that the member can dispose of
the fund in the manner he may direct, and that those
who are not dependent upon him may be made the ob-
jects of his bounty, while infant children for whose bene-
fit the gift to the mother was doubtless made, or at least
for the maintenance of wife and children, are to be ex-
cluded from all the benefits of this benevolent order, and
by the act of the member whose conduct has driven the
wife to a final separation, resulting in a division of her
property with him under the belief that the original cer-
tificate was in fact her property. That the member may
surrender a certificate and have another issued in lieu of

it by the laws of this corporation is not questioned, but a gift of a certificate not surrendered but held by the wife, as in that case, as her property, with the payment of dues out of her own labor that she may protect the insurance from forfeiture and save it for those who were dependent upon the member and entitled to the benevolence of the order, must be held to create some equitable right as against the beneficiaries, who now claim the fund, and who were not dependent on the member or proper subjects of the charity bestowed, otherwise the Chancellor is disregarding the object of the organization, as well as those whose dependent condition made them fit subjects for its benevolence.

In the case of Manning v. Ancient Order United Workmen, 86 Ky., 136, the certificate remained with the lodge. The beneficiary mentioned never paid an assessment. He was not a member of the family. The change was made in favor of the wife, and this court held that the first object of the beneficiary feature of the charter was to aid the family of the assured, and the claim of the widow should not be viewed with disfavor. Here the wife and children, or at least the children who are dependent on the member, are asked to be excluded, and the widow and orphan benefit fund applied to a stranger or to adult children not dependent on the member. Such a ruling, it seems to us, would be in violation of the intent and purpose of every provision of the charter, as the order was incorporated that a fund (this widows' and orphans' fund) might be on hand at the death of the member for the benefit of his family. Does this family include the adult children, who are not dependent and not living in the immediate household in a case where the certificate is payable to the

widow, and who occupies the home with her three infant children? Can it be that the benevolence of the order is to be bestowed on those able to maintain themselves and the widow and infants left penniless? It seems to us that the entire constitution and by-laws of the corporation would compel the order, if left to determine the question, to apply the fund to the widow and infant children of the deceased. That Peter Leaf might direct the fund by designating a beneficiary or beneficiaries coming within the class of those who, by the constitution and by-laws of the corporation, would be the objects of its benevolence, is beyond controversy; and that this might be done by the Supreme Lodge of Missouri, the Kentucky lodges being a part of or subordinate to that Supreme Lodge, is equally certain. And a proper construction of the charter would authorize one with a family not dependent upon him to have a benefit certificate issued payable to all or some member of it; but with a widow and infants it would be a perversion of the object of the order and a violation of the fundamental provisions of its charter to appropriate the widows' and orphans' fund to adults, excluding the widow and infant children.

It is argued that there is no widow surviving the deceased by reason of the divorce granted by the Chancellor, by which the marriage tie was severed. It has been held that a policy of insurance on the life of the husband for the benefit of the wife was not forfeited by reason of a divorce subsequently obtained, but that the right of the wife still continued. (Goldsmith v. Union Mutual Life Insurance Company, 17 Abbott's New Cases, 15.

Whether this is the correct doctrine is not necessary to be determined, as in this case the appellee, although

divorced, whose earnings contributed to keep the insurance alive, and who divided the estate to which she had title with her husband when the divorce was granted, on the idea that she was invested with a beneficial interest in this fund, should enjoy its benefits equally with her children, and as the appellants are not entitled they have no right to complain.

Judgment affirmed.

To a petition for rehearing filed by counsel for appellants Judge Pryor delivered the following response of the court:

The counsel filing the petition for rehearing misconceives the meaning of the opinion.

That Peter Leaf could have had a certificate issued in favor of any member of his family by the consent of the order is not denied; that he could have the name of the beneficiary changed is equally certain, and the fact that the original certificate had been lost or where it could not be obtained by him authorized the order to issue another certificate for the benefit of others than those named in the original certificate. Counsel is right in the suggestions on these points, but they fail to reach the question presented here. It is assumed in the petition that no equities can arise as between parties in the distribution of this widows' and orphans' fund, but the one named in the certificate is entitled to it and *no one else.* The order seemed to have had trouble in determining to whom this money should be paid, and left it to the Chancellor. This court said in the original opinion that in settling the rights of this family it would be a perversion of the very object of the order to give the money to the adults, excluding the widow. This is a case where the widow has a superior

equity over all others to the insurance for two reasons : first, she, by her own means and personal labor with the original certificate in her possession, kept the insurance alive; second, she surrendered to her husband one half of the realty, to which she had title, under the implied agreement, and, as the proof indicates, an express agreement, that she was to have the fund, and if the husband was living could be compelled to answer for its equivalent in value. The wife has intercepted the fund before it reached the children who are named as the beneficiaries, and her equity is so great that no Chancellor should withhold a judgment in her behalf.

This case has gone to an associate judge as the rule requires.