UNITED ORDER OF THE GOLDEN CROSS *vs.* SPENCER R.
· MERRICK, administrator, & others.

Suffolk.   January 23, 24, 1896. — February 29, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Beneficiary Association — Validity of Designation of Beneficiary — Foreign
Corporation — Lex Loci Contractus — Statute.*

Under Sts. 1890, c. 341, § 1, and 1892, c. 40, § 1, amending St. 1888, c. 429, § 11,
the designation, in a benefit certificate issued by a corporation organized under
the laws of another State and transacting business in this Commonwealth, of a
person who could not take under a certificate issued by such a corporation
organized here, is valid if permitted by the charter.

A letter written by a person, upon being informed by a member of a beneficiary
association that he is to be made his beneficiary, thanking the member for
his act, and saying that the writer would pay the assessments, is not within
St. 1888, c. 429, § 9, as amended by St. 1890, c. 341, § 1.

BILL IN EQUITY, in the nature of a bill of interpleader, to
ascertain to whom the plaintiff should pay $2,000, which be-
came payable by it on the death of one Clementine N. Towne,
on September 30, 1893.   Hearing in the Superior Court, before
*Richardson*, J., who reported the case for the determination of
this court, in substance as follows.

The plaintiff is a beneficiary corporation, incorporated under
the laws of Tennessee, and has established a Grand Com-
mandery and subordinate lodges in Massachusetts, called "com-
manderies," through which, in the manner provided in its
charter,* constitution, and general laws, it receives members
and issues benefit certificates to members, on the assessment
plan, and. without paid agents.

It was admitted by the insurance department to do business
in this Commonwealth prior to January 1, 1888, and has con-
tinued to carry on its affairs here in the manner above named,

---

* The charter recited one of the objects of the corporation to be: "To
establish a benefit fund, from which a sum not to exceed $2,000 shall be paid
at the death of each member to his or her family, or to be disposed of as he
or she may direct."

and to do all things incident to the management of its affairs, as set forth in its charter, constitution, and general laws, to the present time.

In accordance with its charter, constitution, and general laws, Wachusett Commandery, No. 56, was lawfully instituted at Clinton prior to January 1, 1889, and on January 25, 1889, Clementine N. Towne, of Clinton, became a member of said commandery, naming as her beneficiaries her sisters, Love A. Nye and Abby P. Plummer, and her brothers, Eben W. Gerald and Alexander P. Gerald; and a benefit certificate was issued to her by the plaintiff, payable to the above named beneficiaries. The officers who attested the delivery of this certificate lived in Clinton, and were officers of Wachusett Commandery, as described in the certificate. It is under this certificate of her rights as a member of Wachusett Commandery, and as heirs at law and next of kin of Clementine N. Towne, that her sisters and brothers above named claim this fund.

Clementine N. Towne was a widow, and her occupation or business was that of a nurse. She had for fifteen years prior to her death stayed with her sister, Abby P. Plummer, in Clinton, except when engaged in nursing or visiting, but was away nursing most of the time, and with this sister she kept her furniture, bedding, and such of her personal effects as she did not desire to take with her from place to place. During almost all the time for two years prior to her death she had been employed as a nurse in Nashua, New Hampshire, and had been in Nashua all that time except when away for a short period. At the time of her death she had been about one month at the house of her sister, in Clinton, intending to return to Nashua soon. Prior to November 28, 1892, and in that month, and while in Nashua engaged in nursing, she wrote to Emma I. Chase, one of the defendants, offering to make her and her husband, Joseph W. Chase, another defendant, her beneficiaries of the fund in controversy. This letter was lost, but it said nothing about the Chases paying the dues or assessments. In answer to this letter, Joseph W. Chase wrote a letter to her, thanking her for making him a beneficiary, saying that he would pay the assessments, and giving her directions about sending her certificate, and getting a new one in exchange.

On November 28, 1892, Clementine N. Towne, then being in Nashua, returned her benefit certificate, and directed that a new one be issued to her, "Payable to Joseph W. Chase, $1,000, Emma I. Chase, $1,000. Not any relation." The names of the Chases in the application, and the words, "Not any relation," are in the handwriting of Joseph W. Chase, who had formerly been an officer in Wachusett Commandery, but in 1892 he was not an officer. The application and old certificate were sent by Clementine N. Towne by mail, and received at Clinton by Sarah A. Seaward, the Keeper of Records of Wachusett Commandery, and by her forwarded to the Supreme Keeper of Records at Knoxville, Tennessee. A benefit certificate was returned to Seaward, reciting that it was "issued to Clementine N. Towne," and naming as beneficiaries Joseph W. Chase and Emma I. Chase. The officers who attested the delivery of this certificate lived in Clinton, and were officers of Wachusett Commandery, as described in the certificate. It is under this certificate that Joseph W. Chase and Emma I. Chase claim this fund. Mrs. Seaward and the other witnesses signed the certificate, and she then sent it by mail to Clementine N. Towne, at Nashua. At the time the witnesses signed the certificate, and prior to its being mailed in Clinton, Clementine N. Towne had not signed it; she signed it in Nashua, and subsequently sent it by mail to Joseph W. Chase, by whom it was received. Clementine N. Towne did not come to Clinton during the transaction, but remained in Nashua.

Since the time of the issuing of the certificate in favor of the Chases, they have paid the assessments becoming due, because of the interest of Clementine N. Towne in the benefit fund of the Supreme Commandery. At the time of the issuing of the certificate, Clementine N. Towne was indebted to Joseph W. Chase to the amount of about forty dollars for payments of assessments and dues. Joseph W. Chase had borrowed $300 of Clementine N. Towne before the certificate was issued to him and his wife, and given his promissory note therefor, and still owed Clementine N. Towne about $25 on this note at the time of her death. Clementine N. Towne was not a relative of the Chases, or a member of their family; nor were they, or either of them, dependent upon her.

The defendant Merrick was duly appointed administrator of the estate of Clementine N. Towne, and as such claims the fund in question.

Such decree was to be entered as this court should order.

*W. H. Powers,* for the plaintiff, read the papers in the case.

*J. H. Quincy,* for the administrator and certain defendants.

*G. L. Mayberry,* for other defendants.

HOLMES, J.    This case has been considered by this court on a former occasion, and at that time, with a view to shortening litigation if possible, we intimated that the laws of the corporation were not to be read as attempting to limit the absolute power of disposition given to the members by the charter.    The charter does not appear to be qualified by any general statutes of Tennessee.    163 Mass. 374, 376.    See *Kentucky Masonic Ins. Co.* v. *Miller,* 13 Bush, 489 ; *Raub* v. *Masonic Mutual Relief Association,* 3 Mackey D. C. 68.    The tenor of the decision also implies that a corporation of another State lawfully doing business here is not forbidden by our laws to make contracts naming beneficiaries who cannot take under a contract with a Massachusetts corporation.    The question arises under the statutes of 1890 and 1892, as the certificate under which this bill of interpleader is brought was issued on December 2, 1892.    By those statutes corporations like the plaintiff, "now transacting in this Commonwealth business as herein defined, may continue such business upon the plans heretofore governing them, as reported to the insurance department, and by otherwise conforming to the provisions of this act."    St. 1890, c. 341, § 1, and St. 1892, c. 40, § 1, amending St. 1888, c. 429, § 11.    The natural interpretation of this language is that the corporations are allowed to do business in accordance with their charter and by-laws if, as is to be presumed, and as appears in this case from the report, the charter and by-laws have determined the "plans heretofore governing them."

The earlier statute of 1888, before it was amended, was a little more ambiguous, and very likely was amended for that reason ; but we find nothing in the original § 11 which absolutely requires a different construction.    That section allowed the corporations "now transacting in this Commonwealth business as herein defined," etc., as the plaintiff was doing, to "continue such busi-

ness without incorporating under this act, by conforming in other respects to the foregoing provisions," etc.   It is argued that the requirement of conformity to the foregoing provisions limited the foreign corporations to the beneficiaries mentioned in § 8.   That section was one giving powers to domestic corporations, among other things, to assess members for a sum to be paid to beneficiaries of the classes mentioned.   It might be said, of course, that there was an implied prohibition against allowing beneficiaries to be named outside the designated classes, and that this implied prohibition was embraced in the words " foregoing provisions."   But the requirement of conformity to provisions more naturally and obviously refers to express prohibitions and commands, like that in § 10, forbidding reinsurance with unauthorized organizations, than to an implication from language the direct purpose of which is to grant powers to domestic corporations formed under the act.   The foreign corporation derives its powers as a corporation from its foreign charter, so that the empowering words in their primary operation cannot apply to the plaintiff.

At all events, we are of opinion that any doubt raised by the statute of 1888 is disposed of by the later statutes ; and we come to the conclusion the more readily as the naming of beneficiaries does not affect the validity of the contract, but simply is a declaration of trust, which is not necessarily or properly a matter for regulation by the *lex loci contractus.*   The contract being valid, the corporation foreign, and its charter recognizing any beneficiaries named by the member, there would seem to be no propriety in this State refusing to enforce a claim which would be valid outside of it.   The designation of beneficiaries in the last certificate issued is valid.

The letter of Joseph W. Chase to the member, thanking her for making him a beneficiary, and saying that he would pay the assessments, is not within St. 1888, c. 429, § 9, as amended by St. 1890, c. 341, § 1.   It does not make the certificate conditional upon an understanding that the beneficiary shall pay the dues, which seems to be what the amendment is aimed at.   It does not even make the assignment conditional.

*Decree accordingly.*